UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

_____

UNITED STATES OF AMERICA          )

                VS                )   CASE NO: 17-cr-59-1

TRAVIS BARROW                     )

_____)    SENTENCING HEARING


BEFORE:   HONORABLE GEOFFREY W. CRAWFORD
          CHIEF JUDGE



APPEARANCES:  NATHANAEL T. BURRIS, ESQUIRE
              Assistant U.S. Attorney
              P.O. Box 570
              Burlington, Vermont   05402
              Representing The Government



              MICHAEL L. DESAUTELS, ESQUIRE
              Federal Public Defender
              126 College Street, Suite 410
              Burlington, Vermont   05401
              Representing The Defendant



DATE:         March 22, 2018

          TRANSCRIBED BY:  Anne Marie Henry, RPR
                  Official Court Reporter
                    P.O. Box 1932
                  Brattleboro, Vermont   05302

1          (The Court opened at 10:30 a.m.)

2          THE CLERK:  Your Honor, the matter before the

3    Court is criminal number 17-59, United States of America

4    versus Travis Barrow.  Present on behalf of the government

5    is Assistant United States Attorney Nathanael Burris.  The

6    defendant is present with his attorney Michael Desautels.

7    And we are here for sentencing.

8          THE COURT:  Good morning.

9          MR. BURRIS:  Good morning, Your Honor.

10         MR. DESAUTELS:  Good morning, Your Honor.

11         THE COURT:  Good to see everybody.  Good to see

12   you.  Mr. Barrow, I have had a chance to read everything

13   that's been submitted.  I just review on the record what

14   that is to make sure I didn't miss anything.

15         I have your sentencing memo filed by your attorney

16   and a supplement regarding placement at FCI Berlin, which is

17   fine with me.  I understand the, that sounds appropriate.

18         And I have the government's sentencing memorandum

19   and the Pre-Sentence Report.  And I think that's all that we

20   have received recently.  There are filings obviously in the

21   case from earlier on.  Did I get everything from everybody?

22         MR. DESAUTELS:  As far as I know that's all, Your

23   Honor.

24         MR. BURRIS:  Yes, Your Honor.

25         THE COURT:  Good.  Appreciate it.

1          Mr. Barrow, did you receive a -- did you have an

2    opportunity to read the Pre-Sentence Report before today?

3          MR. BARROW:  Yes, I did.

4          THE COURT:  And did you have an opportunity to

5    talk it over in private with your attorney?

6          MR. BARROW:  Yes, I did.

7          THE COURT:  And, Mr. Desautels, are there

8    objections to the Pre-Sentence Report which remain after

9    your discussions with the probation office?

10         MR. DESAUTELS:  Yes, Your Honor.

11         THE COURT:  It's with respect to paragraph eight?

12         MR. DESAUTELS:  Yes, Your Honor.

13         THE COURT:  I read what you had to say.  Did you

14   have anything to add to that?

15         MR. DESAUTELS:  No, Your Honor.

16         THE COURT:  How about from the government's

17   perspective?

18         MR. BURRIS:  Your Honor, my read of the objection,

19   it states he objects to paragraph eight being in the

20   Pre-Sentence Report.

21         THE COURT:  Right.

22         MR. BURRIS:  This isn't an objection to the

23   accuracy of those facts, but to their presence based on an

24   argument about attenuation.  I'm not prepared to prove up

25   that factual underpinning for those events because I think

1    it's, A., we have a C. plea and I don't think that's an

2    efficient use of the Court's time.  And, B., I think this is

3    more of an argument about whether it's appropriate for that

4    factual circumstance to be included based on the connection

5    or lack thereof to the defendant.

6         And I would simply say that those facts are the

7    basis of law enforcement's initial attention to the

8    defendant and why subsequent investigation was undertaken.

9         I would also state that the facts I think are

10   sufficient to show that the defendant at least had some

11   connection to this individual who ultimately died of what

12   the medical examiner determined was a drug overdose.  And

13   for those reasons we would ask that the information remain

14   in the Pre-Sentence Report.

15        THE COURT:  I'm going to grant the motion.  I'll

16   explain why.  The trouble with the paragraph eight, from my

17   perspective, is really, as you say Mr. Burris, it's not

18   necessary to the Court's determination to accept or reject

19   the 11(c)(1)(C) proposal.  So it's kind of extra to the

20   sentencing issues in front of the Court.

21        And leaving it in the Pre-Sentence Report,

22   although it is appropriately stated in a sort of factually

23   modest way, it doesn't confirm that, that Mr. Barrow was the

24   source of the cocaine that led to Mr. Gireaux's (ph) death,

25   it strongly suggests it.

1            As you say, it can't be proved up.  And leaving it

2      in the report is -- runs a risk of being interpreted down

3      the road as a sort of judicial endorsement of something like

4      a manslaughter conviction.  We don't have the evidence for

5      that.  The Bureau of Prisons shouldn't take this as some

6      kind of conclusion by the probation office or the Court that

7      it was, in fact, proved that Mr. Barrow was the source of

8      the fatal cocaine.

9            So in the absence of a proof that I think this

10     becomes conjectural and potentially the source of mischief

11     and unfairness which I can't really predict once it reaches

12     BOP and is used in some kind of, you know, selection of

13     availability of drug treatment or selection of a

14     correctional institution or whatever else they use it for.

15            I think it doesn't weigh enough to serve that

16     purpose.  So it's really for those reasons that I'll grant

17     the motion and strike paragraph eight and the version of the

18     Pre-Sentence Report which will accompany Mr. Barrow into

19     his, a period of incarceration, it won't have that

20     information really because it's not possible to prove it

21     with any degree of certainty.

22            Why don't I move on to the sentencing itself.

23     I've had a chance to read the report and everybody's memos.

24     I agree with both sides and I will accept the 11(c)(1)(C)

25     agreement.  It will make our discussion today a little

1  simpler.

2  The reason for agreeing is that I agree with the

3  prosecution that it's basically a variance upwards from the

4  guideline range, which is below the eight year, 96 month

5  sentence. So the guidelines are -- come in a bit below that

6  at 70 to 87 months, less than eight years.

7  But I think a variance upwards, which is supported

8  by both parties, is acceptable to the Court really for two

9  reasons. One is the prospect of if it isn't accepted by the

10  Court of the 10 year mandatory minimum, which was on the

11  table, could be back on the table if I reject the plea

12  agreement. And I don't think anybody, either side, supports

13  a 10 year sentence. And I think a 10 year sentence would

14  be, would be long given, given these facts.

15  And the other factor supporting the variance

16  upwards I think is the record that Mr. Barrow has

17  accumulated of persistent drug dealing over many years

18  despite multiple state court convictions and jail sentences,

19  both in New York state and especially more recently in

20  Vermont.

21  So those are the factors, concern about the

22  mandatory minimum, which the government is prepared to take

23  off the table by withdrawing the notice of the prior

24  conviction and at the same time a recognition by the Court

25  that the drug dealing behavior is persistent, longstanding.

1  Both of those I think support the compromise that the

2  parties have reached of the eight years.

3        So, why don't I turn things over.  I didn't ask

4  you Mr. Burris.  Any objection to the Pre-Sentence Report

5  from your side?

6        MR. BURRIS:  No, Your Honor.

7        THE COURT:  I hadn't seen that in your memo.

8        At the end of the hearing Mr. Barrow I will put

9  formal findings on the record which address the guidelines

10  calculations and I'll make reference to my reasons which

11  I've just laid out for accepting the 11(c)(1)(C) proposal.

12        But why don't I turn things over to you and your

13  attorney.  I'll be glad to hear from both of you about how

14  you see the sentencing issues today and to hear from you

15  directly.

16        MR. DESAUTELS:  Your Honor, I have nothing to add

17  outside of the memorandum we submitted.

18        THE COURT:  All right.  Mr. Barrow, how do you see

19  things today?

20        MR. BARROW:  Um, I'm relieved that it's over.  And

21  I'm happy to take responsibility, but at the same time I

22  feel that the sentencing was a little bit too high for my

23  crime.  Um, unfortunately we are living in different times

24  right now.

25        THE COURT:  Right.

1    MR. BARROW:  And I feel as if the color of my skin
2  played a part in the time I'm getting today.  I feel like
3  the color of my skin played a part in the 851 being filed on
4  me.  That's all.
5    THE COURT:  Yeah, no.  I'm absorbing what you're
6  saying and listening carefully.
7    MR. BARROW:  Because I've talked to my attorney
8  several times about it.  And he tells me that we have a
9  President Trump and also a racist attorney general and Jeff
10  Sessions.  And I still find it unacceptable that the
11  prosecution does not have any resistance towards his demand.
12  I just um, I'm really sad about what's happening today.
13  Honestly, I feel like I'm being judicially lynched.  And
14  history will remember this moment.  And that's all.
15    THE COURT:  All right.
16    MR. BARROW:  I have a, I have a, excuse me, I'm
17  kind of nervous right now.
18    THE COURT:  Take your time.
19    MR. BARROW:  I have, you know, I have every
20  intentions of appealing this case even though I know it's
21  slim to none that I can win.  But I just feel like I have to
22  somehow fight and somehow do something.
23    I have a two year old son at home that needs me.
24  And I feel like um, once again, that the time I got was a
25  little bit extreme.  I got a lot of things -- I got a lot of

things to be thankful for. I know that my record is um, is strenuous, but I honestly never had a positive foundation. And I don't have that. And I'm determined to get out and get my life together. If anybody's going to make -- if anybody can make any change in my community or in this country I believe it takes somebody like me that's been through the system that can help somebody else along the way.

And my plan is to use what I've been through to help others and deter them from the life of crime that I lived.

I'm really sorry to society about everything and to everybody that I've hurt in my time of drug dealing, but like I've told my family, this is it for me. You'll never see me again. I never had a reason to change my life. But now that I have this boy King Barrow and being separated from him is a sentence in itself. Not being able to see him for the last month, for the last nine months has mentally torn me apart, has mentally torn him apart.

I only see my father five times in my life. My mother was in and out of jail. And I want to be the person that breaks the vicious cycle of incarceration. I never want him to think that going to prison is appropriate. I will do whatever it takes to make his life better than mines.

1    I'm hoping to be sent to Berlin where I can get

2    visits with him on a regular basis because I want to be a

3    part of his life in any way possible.

4         THE COURT:  Right.

5         MR. BARROW:  I want to take this time and use it

6    to be productive and make the best of it and not let it just

7    all be in vein.

8         Once again, I'm sorry to the state of Vermont.

9    I'm sorry to my family.  And I'm sorry to society.  That's

10   all.

11        THE COURT:  All right.  I've taken it all in.  I

12   want to, I hear what you're saying completely about your

13   plans to change the direction of your life, to be a good

14   father.  And I applaud all of that.  I try very hard not to

15   be racially discriminatory.  I'm conscience that these

16   things can happen.  That we have a national history in which

17   they have happened.  I try very hard not to be a part of it.

18        And, but when you say that you are unhappy with

19   the deal I want to make certain, from a legal perspective,

20   you have the chance today to withdraw from it.  I will, if

21   you don't feel this is the right thing for you to do legally

22   we can continue the sentencing.

23        You can talk privately with Mr. Desautels.  You

24   can reflect on it.  If you feel that it's inherently unjust

25   or unfair and you prefer to withdraw from it, either to have

a trial or to have a sentencing without an eight year

agreement, I won't rush forward today.  I'll give you that

opportunity to reflect.

Do you want to take a break now and talk to Mr.

Desautels?

MR. BARROW:  No.  No, Your Honor.  Um, honestly

Cheshire County is really depressing.

THE COURT:  Right.

MR. BARROW:  Everything is sky high.  And the main

factor of me taking this plea today is that I want to get

into a space where I can have visits with my son.

THE COURT:  Sure.

MR. BURRIS:  Not being able to see him is tearing

us apart, it's tearing me apart.  And I'd rather take an

unfair sentence than be away from him any longer.

THE COURT:  Okay.  Mr. Desautels, anything to add

on this issue?

MR. DESAUTELS:  Just to let the Court know that

the issue about the finality of today's proceeding is

something that he and I have discussed.

THE COURT:  Right.

MR. DESAUTELS:  And so the question about whether

he can withdraw it or not, the plea as the Court mentioned,

is what was raised.  I have nothing else, Your Honor.

THE COURT:  All right.  I really am committed to

```
 1    not twisting your arm one way or the other on this, Mr.
 2    Barrow.  Any plea deal that has a binding figure is going to
 3    be a compromise.  And it may seem too high to you and it may
 4    seem too low to the prosecution.  I don't know their view.
 5    But I'm accepting the 11(c)(1)(C) because you told me you
 6    wanted it and the prosecution has told me you wanted it.
 7            If you don't want it this is the moment to tell me
 8    so and we'll suspend the sentencing and give you time to
 9    tell me more formally.
10            MR. DESAUTELS:  Could he and I just talk for a
11    moment, Your Honor?
12            THE COURT:  Of course.
13            (The defendant conferring with his attorney off
14    the record.)
15            MR. DESAUTELS:  We're going to go forward, Your
16    Honor.
17            THE COURT:  Okay.  Thank you.
18            Anything more from the defense side, either one of
19    you?
20            I appreciate your candor.  I really mean it,
21    Mr. Barrow.  I take nothing that you say personally.  And
22    I'm listening carefully.  And I'm not just saying this.  I
23    appreciate your being honest about it because a lot of
24    people are too nervous to speak frankly.  And you've been
25    very upfront.
```

1      MR. BARROW:  Thank you for listening.

2      THE COURT:  Okay.

3      MR. DESAUTELS:  Nothing further, Your Honor.

4      THE COURT:  All right.  Mr. Burris?

5      MR. BURRIS:  Your Honor, I would rest on our

6   written filing in light of the Court's stated reasons for

7   accepting the C. plea which largely mirrored our thoughts.

8      THE COURT:  Okay.  Thank you.

9      Give me just a sec.  The next thing for me to do

10   is read the guidelines calculation into the record so it has

11   a place here in our proceedings.  I'll do that now.

12      The Statement of the Reasons for Sentence.

13   Pursuant to the decisions of the Supreme Court in United

14   States versus Booker and Gall versus United States, and the

15   Second Circuit Court of Appeals decision in United States

16   versus Crosby, in determining the following sentence the

17   court has considered the United States Sentencing Guidelines

18   which apply in this case, including all departure authority

19   contained in the guidelines policy statements as well as all

20   of the factors enumerated in 18 U.S.C., Section 3553(a).

21      The Court finds as follows:  One, the offense of

22   possession with intent to distribute 28 grams or more of

23   cocaine base in violation of 21 U.S.C., Sections 841(a)(1)

24   and 841(b)(1)(B) occurred on or about May 16, 2017.

25   Therefore, the sentencing guidelines apply in this case.

Two, the guideline for this offense is found in Section 2D 1.1 of the guidelines manual, the November 2016 edition.  A preponderance of evidence establishes that the instant offense involved at least 28 grams, but less than 112 grams of cocaine base resulting in a base offense level of 24.

Three, the specific offense characteristics do not apply in this case.

Four, the defendant has clearly manifested an acceptance for his offense conduct, therefore, the offense level is reduced by three levels, pursuant to Guideline Section 3E 1.1.  The total offense level is 21.

Five, the defendant has 10 criminal history points resulting in criminal history category of V.  The guideline range for imprisonment for an offense level of 21 and a criminal history category of five is 70 to 87 months.

Six, the guideline term of supervised release is four to five years.  The defendant is ineligible for probation because probation has been expressly precluded by statute.  That completes the guideline calculation.

I'll turn now to the statutory factors set out at 18 U.S.C., Section 3553.  I've considered these factors --

MR. DESAUTELS:  Your Honor?

THE COURT:  Yes.

MR. DESAUTELS:  I'm really sorry to interrupt you.

I just wanted to make a point.  My sentencing memorandum,
the very first sentence said that he plead guilty to
conspiring to distribute heroin.  That's wrong.  He plead
guilty to possessing, possession with intent to distribute.

THE COURT:  Is that what I said?

MR. DESAUTELS:  You said exactly the correct thing
just like the Pre-Sentence Report states.  I just want to
make sure for the record that you are not being -- your
thinking isn't directed or altered by my mistake.

THE COURT:  Oh, I hear you.  No, no, no.  No
problem.

MR. DESAUTELS:  Thank you.

THE COURT:  Glad you brought it up.

MR. DESAUTELS:  All right.

THE COURT:  I'll turn to the statutory factors set
out at 18 U.S.C., Section 3553.  I've considered these
factors in reaching a sentencing decision which is
sufficient but not greater than necessary to comply with the
purpose of the sentence.

I considered the need for the sentence to reflect
the seriousness of the crime, to promote respect for the law
and to provide just punishment for the offense.  The
sentence should also deter criminal conduct and protect the
public from future crime by the defendant and promote
rehabilitation.

As I said at the beginning, in the case of an 11(c)(1)(C) agreement that provides for a fixed, a proposed fixed term I've considered these factors really in deciding whether the proposed sentence of 96 months, eight years, is consistent with the 3553 factors.

That's necessary in any case, but it's particularly necessary here since the proposed sentence exceeds the, by nine months exceeds the upper guideline range of 70 to 87 months.

So I'll talk about the four factors. First, nature and circumstances of the offense. The offense is possession with intent to distribute 28 grams or more of cocaine base. It can only be described as a serious offense.

The distribution of or the possession with intent to distribute drugs in quantity in our community, and all communities in the United States, causes a great deal of hardship, destruction of people's lives, crime related to the need for addicts to acquire the money to buy the drugs, loss of life in some cases. More related to heroin than to cocaine, but both drugs have fatal consequences.

As Mr. Barrow has, as you have probably seen in your time in the life of drug dealing and drug using the offense causes great destruction to the lives of people who become addicted and dependent on crack cocaine. You saw it

as a child and you saw it as an adult. And I see it also more secondhand in the cases that come here. So it's a serious offense.

History and characteristics of the defendant. That means how I see you as a person. Like everybody, I see positives and negatives. I'll talk about the negatives first so I can finish with the positives.

The primary negative is that you have amassed and built up a substantial record of criminal convictions for drug offenses. And it starts relatively early in your teens and has continued despite the efforts of state court judges in Vermont to impose sentences that re-direct you and to deter you and turn you away from this life. Those have not succeeded. So history and characteristics, the history of involvement in the drug trade is a negative.

On the positive, as you said, and as I completely recognize, your life's taken a positive turn with the relationship with your son's mother, the relationship with your son, with your commitment to a new way of life in supporting him and not permitting him as he grows up to take the course that you did as a young man and that it appears that your father had had before you.

So I hear you in your, I believe you in your commitment to make a change in your son's life.

I tried to do, I don't do a sentence calculation

1  in here, it's too hard for me to predict exactly how long

2  you're going to serve, because it depends on, you know, how

3  you behave, but Mr. Desautels, he's been pre-trial held

4  about 18 months, like that?

5        MR. DESAUTELS:  Yes, Your Honor.

6        THE COURT:  About 18 months?

7        MR. DESAUTELS:  I had it figured out.  It will

8  just be -- it will just be a year this May, Your Honor.

9        THE COURT:  All right.  A little less than I had

10 recalled.  But you have a year in.  Eight years with time

11 off for good behavior.  I can tell you're a guy that is, you

12 know, you've been to prison before, you know how it works,

13 you know how to get along with the process.  You get time

14 off for good behavior.  In something like five years you're

15 going to be released, six, like that.

16       It's a long time in a little boy's life, but he's

17 going to be able to see you in the, in the correctional

18 institution.  You'll be able to write to him.  You will be

19 able to maintain a relationship.  And he's going to be about

20 seven or eight when you are full-time back in his life

21 guiding him as his parent.  And I see that as a very

22 positive thing in your life.

23       The need to avoid unwarranted sentence disparities

24 among similarly situated defendants.  That's our way of

25 saying that we try in this Court, this Judge tries to treat

1  people equally.  Not to play favorites.  Not to fall into

2  the discriminatory practice that you were concerned about

3  that you, that you raised.

4          And this sentence of eight years is at the higher

5  end, but within the range of sentences that I've handed down

6  over the last three and a half years in cases of people

7  involved in the business of selling drugs.

8          And as I read the Pre-Sentence Report your

9  activities were, was the way that you made your living.  It

10  wasn't activity driven by your need to get drugs for

11  yourself so much as your business.  And those people

12  involved in, everybody is a little different, but I've tried

13  to be consistent about sending people involved in the drug

14  business to prison because that is the way that we try and,

15  as a society, express our concern and, and our determination

16  to change things.  Okay.  To change your life and to change

17  the business of drug dealing, to eradicate it because, as

18  you know, it's very damaging.

19          The types of sentences available.  An

20  incarcerative sentence is the only sentence available to the

21  Court.  Probation would not be appropriate.  And it's

22  expressly precluded by law, as I said before.

23          So I'm satisfied, as I think about your case, that

24  the deal that both sides have brought to me is a fair

25  compromise.  I won't repeat my previous remarks.  And I will

accept it and I'll impose the agreed upon sentence in the plea agreement.

It's the sentence of the Court that the defendant is committed to the custody of the Federal Bureau of Prisons for a term of eight years, which is 96 months.  To be followed by a four year term of supervised release.  No fine is imposed because the defendant lacks the financial ability to pay.  The mandatory assessment of the $100 is imposed at this time and is payable now.

When you complete your prison term you'll be released on conditions of supervised release, similar to state probation conditions that you've experienced before.

I'll read them aloud.  I don't think any of them will surprise you.

A., You must not commit another federal, state or local crime.

B., You must not unlawfully possess a controlled substance.

C., You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter, as determined by the Court.

D., you must cooperate in the collection of DNA as directed by the probation officer.

1          E., you must comply with the standard conditions

2   of supervision recommended by the Sentencing Commission as

3   set forth in Part G. of the Pre-Sentence Report.

4          These conditions are imposed because they

5   establish the basic expectations for your behavior while on

6   supervision and identify the minimum tools needed by

7   probation officers to keep informed, report to the Court

8   about, and bring about improvements in your conduct and

9   condition.

10         F., You must submit your person, property, house,

11  residence, vehicle, papers, computers, as defined in 18

12  U.S.C, Section 1030(e)(1), other electronic communications,

13  or data storage devices, or media, or office, to a search

14  conducted by a United States Probation Officer.  Failure to

15  submit to a search may be grounds for revocation of release.

16         You must warn any other occupants that the

17  premises may be subject to searches pursuant to this

18  condition.  An officer may conduct a search pursuant to this

19  condition only when reasonable suspicion exists that you

20  have violated a condition of supervision and that the areas

21  to be searched contain evidence of this violation.  Any

22  search must be conducted at a reasonable time and in a

23  reasonable manner.

24         G., You must participate in a program approved by

25  the United States Probation Office for substance abuse,

which program may include testing to determine whether you
have gone back, reverted, to the use of drugs or alcohol.
You shall contribute to the cost of services rendered in an
amount to be determined by the probation officer based on
ability to pay or the availability of third-party payment.

You must refrain from the use of alcohol and other
intoxicants during and after treatment.

The guideline fine range is from 15,000 to
$5 million.  The defendant has demonstrated no ability to
pay a fine, therefore, all fines are waived.  A special
assessment of $100 is imposed due immediately.

You have appeal rights.  They are important.  I'll
read them aloud to you.

Both the defendant and the government may have the
right to appeal this sentence, as set forth in Title 18,
U.S. Code, Section 3742.  If the defendant is unable to pay
the cost of an appeal, he has the right to apply for leave
to appeal in forma pauperis, that means without paying any
filing fee or court expense, and request the Court to
appoint counsel for him.

If the defendant so requests, the Clerk of the
Court shall prepare and file forthwith a Notice of Appeal on
his behalf.  Notice of Appeal by the defendant must be filed
within 14 days of the date judgment is entered on the
docket, pursuant to Rule 4(b) of the Federal Rules of

Appellate Procedure.

That brings the formal part of the sentencing to a conclusion. I just would have this to say Mr. Barrow, I'm not going to give you a lecture. I respect you too much for that.

Do you plan, with your family, to remain in, like, the Burlington area, Chittenden County upon your release? I know your wife has a job up in that area. I hope you do. I just was asking.

MR. BARROW: Actually, I have a friend, she's at New England Air Systems.

THE COURT: Excellent.

MR. BARROW: And she has her own business. And she's actually working with autistic children. And our plan is get our credit together and eventually buy a house and have another child.

THE COURT: Yeah, that's an excellent plan. I totally support it. The reason I ask is this, I also live in Chittenden County. So on your release you're likely to -- I walk a lot, right, downtown and so forth. You're likely to run into me.

What I hope you do is come, march right up, shake my hand, introduce me to your son if he's with you or his mom, let me know that things are on the up and up. When you see me on Church Street or something, you know, don't go the

1  other way, come right up and tell me how things are going.

2  MR. BARROW: Absolutely.

3  THE COURT: All right. Because we'll welcome you

4  back into the community. You'll be an important and valued

5  member. And we just need you back in a different frame of

6  mind, you know, following a different course of life, okay?

7  MR. BARROW: I appreciate it, Your Honor.

8  THE COURT: I'll look forward to seeing you.

9  Thank you.

10  MR. DESAUTELS: Your Honor? We do have counts.

11  THE COURT: We do. Yeah, thank you.

12  MR. DESAUTELS: Would you also --

13  THE COURT: Oh, I'm sorry. I neglected that.

14  MR. DESAUTELS: Would you make a recommendation to

15  the Bureau of Prisons?

16  THE COURT: Absolutely. Thank you for reminding

17  me. I completely endorse the request. And I'll make the

18  recommendation, and I apologize I should have mentioned it,

19  that BOP place you at FCI Berlin.

20  The reason for that recommendation is that it will

21  permit as much contact as possible with your small son.

22  And I also know that FCI Berlin is engaged, I

23  haven't visited there yet, I need to go, is engaged in drug

24  treatment, drug rehab. They have programs there. Is RDAP a

25  possibility?

1          MR. DESAUTELS:  Yes, Your Honor.

2          THE COURT:  And I would recommend that you

3   participate -- be accepted into the RDAP drug, in prison

4   drug rehabilitation program.  They'll tell you more about

5   it, but it would come with my recommendation also.  And it

6   has personal advantages to you.  It has some legal

7   advantages as well that your lawyer can talk to you about.

8          MR. BARROW:  Thank you, Your Honor.

9          THE COURT:  And we got some extra charges?

10         MR. BURRIS:  Yes, Your Honor.  In light of the

11  Court's acceptance of the plea we would move to dismiss

12  count one and two of the indictment.

13         THE COURT:  Granted.  Sorry.  I didn't mean to

14  rush off.

15         Anything else for me to decide?

16         MR. DESAUTELS:  No.  Thank you, Your Honor.

17         THE COURT:  Good enough.  Thanks.

18         (The Court recessed at 11:13 a.m.)

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3          I, Anne Marie Henry, Official Court Reporter for

4     the United States District Court, for the District of

5     Vermont, do hereby certify that the foregoing pages are a

6     true and accurate transcription of my shorthand notes taken

7     in the aforementioned matter to the best of my skill and

8     ability.

9

10    _____

11                    Anne Marie Henry, RPR
                      Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25